Johnny M. Bagley, Plaintiff
Reg. No. 24870-056
Federal Correctional Institution – Beckley
Post Office Box 350
Beaver, West Virginia 25813



FILED

MAR 21 2008

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

| | | |
|---|---|---|
| JOHNNY M. BAGLEY, | ) | |
| PLAINTIFF, | ) | CASE NO.: 5:08-0187 |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED PURSUANT |
| T.R. CRAIG, (WARDEN) | ) | TO THE SEVENTH AMENDMENT |
| DOMINIC McLAIN, H. SHREWBURY, | ) | TO THE U.S. CONSTITUTION |
| K. M. WHITE, HARRELL WATTS, | ) | |
| DEFENDANTS. | ) | |

<u>COMPLAINT</u>

<u>Preliminary Statement</u>

This is a joint, civil rights action / tort filed by the Plaintiff, Johnny M. Bagley, a federal prisoner, for damages and injunctive relief under 28 U.S.C. §1331, alleging the denial of medical care in violation of the Eighth Amendment to the United States Constitution. The Plaintiff also appeals a tort for negligence and deliberate indifference.

<u>Jurisdiction</u>

1. This Court has jurisdiction over the Plaintiffs' claims of the violation of his constitutional rights under 28 U.S.C. §1331. The Federal Tort Claim Act is

subject to West Virginia's Medical Professional Liability Act (MLPA) W. VA. Code
§55-7B-2(f) & (g).

## Parties

2.   The Plaintiff, Johnny M. Bagley, was injured at F.C.I. Beckley ("Beckley"),
while playing basketball and has been treated with deliberate indifference and has
been unable to receive proper medical treatment. As a result, the Plaintiff seeks
compensatory damages, punitive damages, and injunctive relief as described in this
complaint.

3.   Defendant T. R. Craig is Warden of F.C.I. Beckley and is responsible for
reviewing the request for administrative remedy and ensuring that prisoners in his
institution receive proper medical care.  He is sued in his individual and
official capacity.

4.   Defendant Dr. Dominic McLain is the, Clinical Director and chief doctor at
F.C.I. Beckley's Health Services Department ("Medical") and is responsible for the
proper treatment of all individuals with serious medical injuries.  He is sued in
his individual and official capacity.

5.   Defendant H. Shrewbury, PA-C, ("Shrewbury"), is the primary care provider of
the Plaintiff and is responsible for treating the Plaintiff's serious medical
injuries, without delay.  He is sued in his individual and official capacity.

2

6.   Defendant K. M. White is the Bureau of Prisons Mid-Atlantic Regional Director. She reviews all Administrative Remedy Regional Appeals and is responsible for oversight of all appeals made from F.C.I. Beckley. She is sued in her individual capacity.

7.   Defendant Harrell Watts is the Bureau of Prisons National Appeals Director and is responsible for reviewing appeals to the Central Office and the oversight of all medically pursued administrative remedy appeals. He is sued in his individual capacity.

Facts

8.   On Sunday, December 18, 2005, the Plaintiff, Johnny M. Bagley was injured at the Federal Correctional Institution - Beckley and was immediately carted to the Health Services Department at the institution. The Plaintiff was told to return the following day in order to see medical staff who were equipped to handle his injury.

9.   On Monday, December 19, 2005, the Plaintiff returned to Medical and was examined by Defendant Shrewbruy, PA-C, who noted the Plaintiff's pain level 10 on a scale of 10, with 10 being the worst. Defendant Shrewbury ordered an X-Ray, and noted the "left knee being swollen above and medially around knee cap. No discoloration and that the Plaintiff was unable to bear weight on the injured [knee]." The Plaintiff was prescribed (1) 20 Motrin 800mg tablets, (2) Ice Packs, (3) Ace Wrap, (4) the use of crutches for two weeks, and, (5) convalescent status from his work assignment for two weeks.

3

10. On January 12, 2006, the Plaintiff was again examined by Defendant Shrewbury. The Plaintiff reported a pain level 7 out of 10. Defendant Shrewbury concluded that the injury to the Plaintiff's left knee "was probably [a] collateral ligament strain." No MRI was administered to confirm Defendant Shrewbury's diagnosis.

11. On January 18, 2006, the Plaintiff returned to the Medical Department complaining of acute pain to his left knee due to his December 18, 2005 injury. He was examined by Defendant Shrewbury who noted the Plaintiff's pain at 8 out of 10. Defendant Shrewbury examined the Plaintiff finding "normal joint, no laxity, no discoloration of the knee, and that his left knee strain was recovering." Defendant Shrewbury prescribed 20 Ibuprofen 800mg and 5 days convalescence statuts, and the continuation of a left knee brace.

12. On February 21, 2006, the Plaintiff was again examined by Defendant Shrewbury who noted the Plaintiff's pain level a 4 out of 10. Defendant Shrewbury prescribed 24 Ibuprofen 800mg, and continued use of a left knee brace.

13. On July 17, 2006, the Plaintiff reinjured the left knee. Due to the deliberate indifference of medical staff at F.C.I. Beckley and the wrong diagnosis, the Plaintiff tried to play a game of basketball and within five minutes of the first game he played since injuring his knee on December 18, 2005, he reinjured his knee. The Plaintiff was assessed by medical staff with a pain level of 8 out of 10, was prescribed Ibuprofen 200mg, told to elevate his knee and apply ice, and told to return the following morning to see his primary care provider, Defendant Shrewbury, for follow-up.

14. On July 18, 2006, the Plaintiff was examined by Defendant Shrewbury where he noted a pain level of 6/7 on a scale of 10. Defendant Shrewbury stated that he was unable to examine the Plaintiff adequately due to the Plaintiff being in recognizable pain and unable to fully flex his knee. The Plaintiff was prescribed 10 Tylenol 500mg, convalescent status for 5 - 6 days, and told to return the following Monday for a follow-up. Defendant Shrewbury also requested an X-Ray be taken of the left knee.

15. On July 24, 2006, the Plaintiff was once again examined by Defendant Shrewbury who noted the Plaintiff's pain level at 7 on a scale of 10. Defendant Shrewbruy once again diagnosed the Plaintiff with a left knee strain and prescribed Ibuprofen 800mg for pain.

16. On July 28, 2006, the Plaintiff was examined by Defendant Shrewbury who noted the results of the X-Ray showed a Bipartite Patella. Defendant Shrewbury requested that the Plaintiff be seen by Defendant McLain, the Clinical Director of F.C.I. Beckley, yet once again denied proper medical care, showing deliberate indifference, by misdiagnosing the Plaintiff and sending him away with a prescription of Motrin 800mg, and convalescent status for 14 days.

18. On August 1, 2006, the Plaintiff submitted a sick call slip complaining of severe pain in his left knee. This request to be seen went unanswered.

19. On August 8, 2006, the Plaintiff submitted another sick-call slip requesting to be seen by medical staff complaining of severe left knee pain.

20. On August 10, 2006, the Plaintiff was examined by Defendant Shrewbury as a result of the August 8, 2006, sick-call. Defendant Shrewbury noted the Plaintiff's main at a 10 on a scale of 10. The Plaintiff was examined by Defendant McLain at Defendant Shrewbury's request. The Plaintiff was prescribed Naproxen 500mg for pain, convalescent status for 7 days, given the use of crutches, and ordered a X-Ray. A notation was also made for the first time acknowledging the possibility of a soft tissue injury.

20. On August 17, 2006, another X-Ray was administered on the Plaintiff. The result revealed a bipartite patella of the left knee, and no evidence of sublaxation, fracture, or joint effusion.

21. On August 21, 2006, an MRI was requested by Defendant Shrewbury after another examination of the Plaintiff which resulted in convalescent status for two weeks and a prescription of Naproxen 500mg.

22. On August 31, 2006, the Plaintiff submitted another sick-call slip seeking medical attention complaining of a pain level 8 out of 10 and the need for further convalescent status. He was seen by Defendant Shrewbury and given convalescent status for two more weeks pending the results of the MRI.

23. On October 5, 2006, the Plaintiff was again examined by Defendant Shrewbury after the expiration of the Plaintiff's convalescent status. Convalescent status was extended for two weeks.

6

24. On October 10, 2006, the Plaintiff was taken to Appalachian Regional Healthcare in Beckley for an MRI. The results showed the medial meniscus abnormal signal intensity consistent with tear involving anterior and posterior horn, and no abnormality in collateral ligaments. The MRI also revealed a minimal amount of joint effusion.

25. On October 26, 2006, the Plaintiff was seen for follow up of knee pain by Defendant Shrewbury and was given convalescent status for three weeks pending the Orthopedic Clinic at F.C.I. Beckley, as well as Naproxen 500mg.

26. On November 17, 2006, the Plaintiff was examined by Dr. Syed A Zahir, M.D., after a consultation request by J. Walker, Orthopedic Coordinator. The clinical impression of the Orthopedic Specialist was internal derangement of the left knee, torn medial meniscus, left knee; Bipartite Patella, left knee. Dr. Zahir concluded that the Plaintiff was going to need arthoscopic surgery and would also need to have excision of the bipartite patella.

27. On December 5, 2006, after living with excruciating pain for almost one year, the Plaintiff was approved for surgery on his left knee and signed a consent form.

28. On January 3, 2007, the Plaintiff was taken to Appalachian Regional Healthcare for arthoscopic surgery. The Report of Operation prepared by Syed Zahir, MD, reported a complex tear to the medial meniscus, a bipartite patella. It was reported that a synovectomy was completed, and the medial meniscus was removed. It was also noted that a considerable about of difficulty arose when trying to remove the bipartite patella. Dr. Zahir concluded that the left knee

7

was to be kept in a knee immobolizer for at least the following 2 to 3 weeks following surgery, prescribed Tylonel #3's for pain, and scheduled for a follow-up in two weeks. Dr. Zahir also noted that the Plaintiff's bandages could be changed within 48 hours.

29. On January 9, 2007, the Plaintiff was seen for follow-up after surgery. No drainage was seen around the incision site. Staples were intact. No redress was needed, although this was the first time since surgery that the dressing was changed. An ACE wrap was given to the Plaintiff with a knee brace. The Plaintiff was also given crutches, Motin 800mg, and assigned to the Orthopedic Clinic for follow up with the specialist.

30. On January 16, 2007, the Plaintiff was examined during the Orthopedic Clinic and the staples were removed, noting 1-2+ effusion of his left knee. Dr. Zahir recommended that the Plaintiff start quadriceps exercises and a follow-up at the next Orthopedic Clinic.

31. On January 19, 2007, the Plaintiff submitted a sick-call requesting to be seen by medical staff because of the continued experience of unbearable pain. The Plaintiff had to wait until January 23, 2007 to be seen. The Plaintiff was prescribed Tylenol for pain and scheduled for the Orthopedic Clinic.

32. On January 25, 2007, the Plaintiff's knee gave out on him after walking down 46 steps shortly after having complex knee surgery and he reinjured his left knee. The Plaintiff signed up for sick-call but was never called by medical personnel.

8

33. On February 1, 2007, the Plaintiff was seen by Dr. Zahir at the Orthopedic Clinic and was told to build up his quadricep mechanism. He was also scheduled for the next Orthopedic Clinic.

34. On February 12, 2007, the Plaintiff again submitted a sick-call requesting medical attention. He complained of severe pain below his left knee, swelling, and extreme stiffness. From this time on, the medical staff at F.C.I. Beckley has failed to treat the Plaintiff's extreme pain or provide adequate medical treatment. The Plaintiff filled out sick-call slips requesting medical attention on August 23, 2007, September 18, 2007, September 28, 2007, October 12, 2007, November 5, 2007, November 20, 2007, November 30, 3007, December 12, 2007, and January 4, 2008, each time complaining of severe pain in the knee. It has become a matter of practice to deny the Plaintiff medical treatment and this has been over two years from the initial injury. The Plaintiff has lived with excruciating pain throughout this entire time and has yet to have his left knee repaired. The Plaintiff is not maligning his story in order to cause problems but is suffering from a serious injury.


Exhaustion of Administrative Remedy


35. On January 25, 2007, the Plaintiff filed a Request for Informal Resolution (BP 8½) claiming he was dissatisfied with the Health Service staff and their failure to properly diagnose and treat his injury. On January 26, 2007, it was determined that an informal resolution was not accomplished.

36. On January 25, 2007, the Plaintiff filed a Request for Administrative Remedy (BP 9), Remedy ID No. 440994-F1 with Defendant T. R. Craig, Warden at F.C.I Beckley, complaining about medical negligence and being treated with deliberate indifference.

37. On February 20, 2007, the acting Warden, Hattie Smalls, denied the Request for Administrative Remedy, Remedy ID No. 440994-F1, stating several inaccuracies in the denial. In the colloquy she stated that on January 16, 2007, while at the Orthopedic Clinic, the Plaintiff was evaluated by the Orthopedic Specialist and it was documented that he was not willing to attempt the physical therapy that was prescribed. As a result of this reasoning, use of a wheelchair was not necessary and the relief requested in the administrative remedy was denied.

38. On February 24, 2007, the Plaintiff appealed to the Regional Administrative Director (BP 10), Defendant K. M. White, Remedy ID No. 440994-R1, for the denial of the acting Warden at F.C.I. Beckley, stating that he was continuously denied medical treatment for the tremendous pain he suffered from his injury, the mistreatment by transporting officers returning from surgery, and taking away the wheelchair too soon since his knee could not support his weight, even with the use of crutches.

39. On May 18, 2007, the Plaintiff filed another Request for Information Resolution (BP 8½) stating a claim of negligence since he was refused medical treatment, even after several requests through the inmate sick-call procedure. The Plaintiff stated that he slipped and fell on the ice on January 25, 2007 and injured his knee, and claims the fall was a direct result of his knee not being

able to carry his weight. He filed several sick call slips but was told by Defendant Shrewbury and Defendant McLain that their was nothing else that could be done until the administrative remedy process was complete. On June 6, 2007, it was determined that an informal resolution was unable to be made.

40. On June 05, 2007, Defendant K. M. White denied the Plaintiffs Administrative Remedy Regional Appeal, Remedy ID No. 440994-R1, stating that his medical treatment and plan of care was adequate.

41. On May 21, 2007, the Plaintiff filed a Central Office Administrative Remedy Appeal, Remedy ID No. 440944-A2, to Defendant Harrell Watts, imploring with the Central Office to assist him in this appeal since he continues to live with excruciating pain. The Plaintiff noted all other claims previously made.

42. On June 06, 2007, the Plaintiff filed a Request for Administrative Remedy, Remedy ID No. 456817-F1, to Defendant T. R. Craig, on his second claim of denial of medical treatment after his January 25, 2007 fall, even after several attempts at receiving medical treatment and stating that he is being forced to live in pain.

43. On April 12, 2007, the Defendant T. R. Craig, denied the Request for Administrative Remedy, Remedy ID No. 456817-F1, stating that the medical records show that he has been seen on four occasions by medical staff and that he was normal. He was further notifed to continue to use the sick-call program if needed.

11

44. On July 23, 2007, the Plaintiff filed a Regional Request for Administrative Remedy to Defendant K. M. White on his second administrative remedy. Remedy ID No. 456817-R1. The defendant stated that he did in fact report the January 25, 2007 fall to medical staff and if it's not in his medical file it was either do to incompetence or cover up. He also reported several ommitted sick call forms from Defendant T. R. Craig's denial.

45. On July 31, 2007, Defendant Harrell Watts denied the Plaintiff's first Administrative Rememdy Appeal, Remedy ID No. 440994-A2, stating that he did not find any evidence to suggest the decisions made by medical staff at F.C.I. Beckley were judicious and appropriate.

46. On August 10, 2007, Defendant K. M. White denied the Plaintiff's second attempt at Administrative Remedy, Remedy ID No. 456817-R1, stating as her reason for denial an adequate and complete plan of care by the primary care provider at F.C.I. Beckley. She further stated that the Plaintiff's request for a MRI showed no evidence to support such a request.

47. On August 24, 2007, the Plaintiff filed a Central Office Administrative Remedy Appeal for his second attempt at an administrative remedy. Remedy ID No. 456817-A1. The Plaintiff raised the same issues and asked the Central Office why the Warden and regional staff were deliberately avoiding to address the issues he raised in his earlier requests. As of this date, the Plaintiff is unaware of any response.

FEDERAL TORT CLAIM

12

48.  In February 2007, the Plaintiff filed a Federal Tort Claim stating deliberate indifference from correctional officers and medical staff.  The relief sought was all future medical costs regarding his knee injury and "at least $10,000."

49.  The Administrative Tort Claim No. TRT-MXR-2007-02476 was denied on April 4, 2007 and a Request for reconsideration was filed on April 17, 2007.

50.  On May 1, 2007, Supervisory Attorney at F.C.I. Beckley, Debbie Stevens, wrote a letter stating that the Tort needed to state a specific amount of money as a claim and not "at least $10,000."

51.  On May 9, 2007, the Plaintiff responded to Debbie Steven's letter stating a monetary claim of a one time payment of $25,000 if an agreement is made to pay all future medical costs associated with the knee injury, and if not, a final settlement of $250,000.

52.  On November 19, 2007, Administrative Tort Claim No. TRT-MRX-2007-02476 was finally denied.

Denial of Medical Care

53.  On several occasions throughout the two years since the Plaintiff's knee injury, he submitted a sick call requesting medical attention.  The Plaintiff was denied adequate medical treatment by continuously prescribing a low intensity pain medication and convalescence status instead of dealing with the injury.  One full

13

year later, after surgery, medical attention to the Plaintiff became more scarce. Even after reporting a fall after surgery, the Plaintiff has been denied attention and the documentation was not placed in his file in an attempt to cover up thier deliberate indifference.

54.   The Plaintiff continues to live with excruciating pain in his left knee.


Claim for Relief

55.   The inaction of all the defendants in this case, whether by deliberately not treating his serious medical injury, or by failing to intervene when they are placed in position to do so for this very reason, were done maliciously and sadistically and constitute cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

56.   The Actions of Defendant's T. R. Craig, K. M. White, and Harrell Watts, in refusing to overturn the misguided and blatantly wrong and malicious decisions of not supplying adequate medical treatment to the Plaintiff, constituted deliberate indifference in violation of the Fifth Amendment prohibition against due process.

57.   The failure of Defendants McLain and Shrewbury to provide the medical treatment needed, including a second opinion, when the Plaintiff has never been found to be maligning his injury, coupled with the physical therapy needed for full recovery constituted a tort of negligence under the law of West Virginia and the Federal tort Claim Act.

Relief Requested

WHEREFORE, the Plaintiff requests that the Court grant the following relief.

A.  Issue a declaratory judgement stating that:

1.  The defendant's Craig, White, and Watts inaction concerning the request for administrative remedy violated the Plaintiff's right under the Due Process Clause of the Fifth Amendment and constituted deliberate indifference.

2.  Defendant's McLain and Shrewbury's actions in failing to provide adequate medical care for the serious medical injury of the Plaintiff violated, and continue to violate the Plaintiff's rights under the Eighth Amendment to the United States Constitution.

B.  Issue an Injunction ordering Defendant's McLain and Shrewbury, or their agents to:

1.  Immediately arrange for the Plaintiff to receive an M.R.I. and a second opinion by a medical practitioner with expertise in the  treatment and restoration of severe knee injuries.

2.  Immediately arrange for the Plaintiff to undergo physical therapy or other follow up treatment to be evaluated by medical practitioner with expertise in the treatment and restoration of severe knee injuries.

3.  Carry our without delay the treatment directed by such medical practitioner.

C.  Award compensatory damages in the following amount:

15

1.  $10,000 jointly and severally against defendants Craig, White, and Watts, for physical and emotional injury resulting from their denial of due process in connection with their deliberate indifference towards the serious medical injury the Plaintiff suffers from.

2.  $2,000,000 jointly and severely against Defendants McLain and Shrewbury for the physical and emotional injury resulting from their failure to provide adequate medical care to the Plaintiff and possibly causing irreparable harm to his left knee.

D.  Award punitive Damages in the following amounts:

1.  $20,000 each against Defendant's Craig, White, and Watts.

2.  $50,000 each against Defendant's McLain and Shrewbury.

E.  Grant such other relief as it may appear that the Plaintiff is entitled.


Respectfully Submitted,


Date: ___03-/9-2008___          /s/ _Johnny M Bagley_

                                Johnny M. Bagley


16

Johnny M. Bagley
Reg. No. 24870-056
F.C.I. Beckley
Post Office Box 350
Beaver, WV 25813

March 19, 2008

Clerk of Court
U.S. District Court
P.O. Drawer 5009
Beckley, WV 25801

Dear Clerk,

Please find enclosed one original Complaint, Application to Proceed In Forma
Pauperis, and Authorization for Release of Institutional Account, and five
(5) copies, complete with Summons' in a civil case to each defendant.
Please order the U.S. Marshals Service to serve the defendant's in accordance
with Rule 4(i)(3) of the F.R.Civ.P. Also, please send me a docket sheet in
the above referenced case once this case is docketed.

I thank you for your assistance.

Respectfully,


Johnny M. Bagley



Johnny M. Bagley
Reg. No. 24870-056
Federal Correctional Institution – Beckley
Post Office Box 350
Beaver, WV 25813

LEGAL MAIL

QUALITY PARK
9-1/2 x 12-1/2

FEDERAL CORRECTIONAL INSTITUTION
BECKLEY
P O BOX 1280
BEAVER, WV 25813

DATE _____ 3-14-08

THE ENCLOSED LETTER WAS PROCESSED THROUGH
SPECIAL MAILING PROCEDURES FOR FORWARDING TO
YOU. THE LETTER HAS NEITHER BEEN OPENED NOR
INSPECTED. IF THE WRITER RAISES A QUESTION OR
PROBLEM OVER WHICH THIS FACILITY HAS JURIS-
DICTION, YOU MAY WISH TO RETURN THE MATERIAL
FOR FURTHER INFORMATION OR CLARIFICATION. IF
THE WRITER ENCLOSES CORRESPONDENCE FOR
FORWARDING TO ANOTHER ADDRESSEE, PLEASE
RETURN THE ENCLOSURE TO THE ABOVE ADDRESS.