## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | |
|---|---|
| **JOHNNY M. BAGLEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) Civil Action No. 5:08-0187 |
| | ) |
| **T.R. CRAIG,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

### **PROPOSED FINDINGS AND RECOMMENDATION**

On March 21, 2008, Plaintiff, acting *pro se*[1] and formerly incarcerated at FCI Beckley, filed his Complaint in this matter claiming entitlement to relief pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*,[2] and for alleged violations of his constitutional and

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2] The FTCA authorizes suits against the United States for damages for injuries or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred. Federal inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *See Carlson v. Green*, 446 U.S. 14, 21-23, 100 S.Ct. 1468, 1472-74, 64 L.Ed.2d 15 (1980). By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive

civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). Plaintiff named the following as defendants: (1) T.R. Craig, Warden of FCI Beckley; (2) Dr. Dominic McLain, Clinical Director at FCI Beckley; (3) H. Shrewsbury, PA-C; (4) K.M. White, Bureau of Prisons Mid-Atlantic Regional Director; and (5) Harrell Watts, Bureau of Prisons National Appeals Director. (Document No. 3, pp. 2 - 3, ¶¶ 3 - 7.) Plaintiff alleges that Defendants acted with negligence and deliberate indifference in providing treatment for his knee injury. (Id., p. 3.) During his incarceration at FCI Beckley, Plaintiff claims that he injured knee while playing basketball on December 18, 2005. (Id., ¶ 8.) Plaintiff acknowledges that he was "immediately carted to the Health Service Department" following his injury, but was "told to return the following day in order to see medical staff who were equipped to handle his injury." (Id.) Plaintiff states that he returned to the medical unit on December 19, 2005, and was examined by Defendant Shrewsbury. (Id., ¶ 9.) Plaintiff acknowledges that Defendant Shrewbury ordered an x-ray and "prescribed (1) 20 Motrin 800 mg tablets, (2) Ice packs, (3) Ace wrap, (4) the use of crutches for two weeks, and (5) convalescent status from his work assignment for two weeks." (Id.) On January 12, 2006, Defendant Shrewbury allegedly examined Plaintiff's knee concluding that it "was probably a collateral ligament strain." (Id., p. 4, ¶ 10.) Plaintiff claims that he returned to the medical unit on January 18, 2006, complaining of acute pain in his left knee, but Defendant Shrewsbury found "normal joint, no laxity, no discoloration of the knee, and that his left knee strain was recovering." (Id., ¶ 11.) Plaintiff states that "Defendant Shrewsbury prescribed 20 Ibuprofen 800 mg and 5 days convalescence status, and the continuation of a left knee brace."

---

damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id*.

(Id.)

On February 21, 2006, Defendant Shrewsbury examined Plaintiff's knee and "prescribed 24 Ibuprofen 800 mg, and continued use of a left knee brace." (Id., ¶ 12.) Plaintiff argues that "[d]ue to the deliberate indifference of medical staff at FCI Beckley and the wrong diagnosis, the Plaintiff tried to play a game of basketball" on July 17, 2006, and re-injured his left knee. (Id., ¶ 13.) Plaintiff acknowledges that he was examined by medical staff and "prescribed Ibuprofen 200 mg, told to elevate his knee and apply ice, and told to return the following morning to see his primary care provider, Defendant Shrewsbury, for follow-up." (Id.) Defendant Shrewsbury evaluated Plaintiff on July 18, 2006, and allegedly "stated that he was unable to examine Plaintiff adequately due to the Plaintiff being in recognizable pain and unable to fully flex his knee." (Id., p. 5, ¶ 14.) Plaintiff states that Defendant Shrewsbury ordered an x-ray and "prescribed 10 Tylenol 500 mg, convalescent status for 5 - 6 days, and told to return the following Monday for follow-up." (Id.) On July 24, 2006, Defendant Shrewsbury allegedly "diagnosed the Plaintiff with a left knee strain and prescribed Ibuprofen 800 mg for pain." (Id., ¶ 15.) Defendant Shrewsbury again examined Plaintiff's knee on July 28, 2006, and "noted the results of the x-ray showed a Bipartite Patella." (Id., ¶ 16.) Plaintiff acknowledges that Defendant Shrewsbury "requested that Plaintiff be seen by Defendant McLain, the Clinical Director of FCI Beckley" and prescribed "Motrin 800 mg, and convalescent status for 14 days." (Id.)

Plaintiff contends that he submitted a sick call request complaining of severe pain on August 1, 2006, but his request went unanswered. (Id., ¶ 18.) Plaintiff allegedly submitted another sick call complaining of severe pain on August 8, 2006, and was examined by Defendant Shrewsbury on August 10, 2006. (Id., pp. 5 - 6, ¶¶ 19 - 20.) Plaintiff states that Defendant Shrewsbury noted a

3

possible "soft tissue injury" and "prescribed Naproxen 500 mg for pain, convalescent status for 7 days, given the use of crutches, and ordered a x-ray." (Id., p. 6, ¶ 20.) An x-ray was taken of Plaintiff's knee on August 17, 2006, which "revealed a bipartite patella of the left knee, and no evidence of sublaxation, fracture, or joint effusion." (Id.)[3] On August 21, 2006, Defendant Shrewsbury allegedly ordered an MRI and "convalescent status for two weeks and a prescription of Naproxen 500 mg." (Id., ¶ 21.) Plaintiff claims that on August 31, 2006, he submitted a sick call request seeking medical attention and further convalescent status. (Id., ¶ 22.) Plaintiff acknowledges that Defendant Shrewsbury examined him and ordered "convalescent status for two more weeks pending the results of the MRI." (Id.) On October 5, 2006, Defendant Shrewsbury evaluated Plaintiff and prescribed convalescent status for two weeks. (Id., ¶ 23.) Plaintiff was transferred to Appalachian Regional Healthcare in Beckley on October 10, 2006, for an MRI. (Id., p. 7, ¶ 24.) Plaintiff contends that the MRI revealed "a minimal amount of joint effusion" and "showed the medial meniscus abnormal signal intensity consistent with a tear involving anterior and posterior horn." (Id.) On October 26, 2006, Defendant Shrewsbury saw Plaintiff for a follow-up care and prescribed "convalescent status for three weeks pending the Orthopedic Clinic at F.C.I. Beckley, as well as Naproxen 500 mg." (Id., ¶ 25.) On November 17, 2006, Dr. Syed A. Zahir examined Plaintiff and determined that Plaintiff had "internal derangement of the left knee, torn medial meniscus, left knee; Bipartite Patella, left knee." (Id., ¶ 26.) Dr. Zahir allegedly recommended arthoscopic surgery and an "excision of the bipartite patella." (Id.) Plaintiff claims that on December 5, 2006, he "was approved for surgery on his left knee and signed a consent form." (Id., ¶ 27.) On January 3, 2007,

---

[3] The undersigned notes that Plaintiff has labeled two paragraphs as number 20. (Document No. 3, p. 6.)

Dr. Zahir perform arthoscopic surgery on Plaintiff's left knee at the Appalachian Regional Healthcare facility. (Id., ¶ 28.) Dr. Zahir's "Report of Operation" allegedly stated that Plaintiff had "a complex tear to the medical meniscus, a bipartite patella," "asynovectomy was completed, and the medical meniscus was removed," and "a considerable amount of difficulty arose when trying to remove the bipartite patella." (Id.) Dr. Zahir allegedly ordered that Plaintiff's knee "be kept in a knee immobilizer for at least the following 2 to 3 weeks following surgery, prescribed Tylonel #3 for pain, and scheduled for a follow-up in two weeks." (Id., p. 8.)

Plaintiff states that he was seen for his first follow-up on January 9, 2007, and "[n]o drainage was seen around the incision site," "[s]taples were intact," and "[n]o redress was needed." (Id., ¶ 29.) Plaintiff acknowledges that he was "given crutches, Motrin 800 mg, and assigned to the Orthopedic Clinic for follow-up with a specialist." (Id.) On January 16, 2007, Plaintiff was examined by Dr. Zahir, who removed the staples, noted "1 - 2+ effusion of the left knee," and "recommended that the Plaintiff start quadriceps exercises." (Id., ¶ 30.) Plaintiff states that he submitted a sick call request on January 19, 2007 complaining of "unbearable pain." (Id., ¶ 31.) Plaintiff claims that he was evaluated on January 23, 2007, and "prescribed Tylenol for pain and scheduled for the Orthopedic Clinic." (Id.) Plaintiff asserts that he re-injured his left knee on January 25, 2007, after his "knee gave out on him after walking down 46 steps." (Id., ¶ 32.) He complains that he "signed up for sick-call but was never called by medical personnel." (Id.) On February 1, 2007, Dr. Zahir evaluated Plaintiff and instructed him to "build up his quadricep mechanism." (Id., p. 9, ¶ 33.) Plaintiff alleges that even though he has submitted numerous sick-call requests complaining of severe knee pain since February 12, 2007, Defendants have failed to provided medical treatment. (Id., ¶ 34.) Specifically, Plaintiff states that he was denied medical treatment after filing sick-call requests on

5

the following dates: February 12, 2007; August 23, 2007; September 18, 2007; September 28, 2007; October 12, 2007; November 5, 2007; November 20, 2007; November 30, 2007; December 12, 2007; and January 4, 2008. (Id.) Plaintiff requests declaratory, injunctive, and monetary relief. (Id., pp. 15 -16.)

By Order entered on October 1, 2010, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed Plaintiff to serve the Summonses and Complaint upon Defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure. (Document No. 14.) On January 24, 2011, Plaintiff filed a Motion for an Extension of Time. (Document No. 17.) In support of his Motion, Plaintiff stated that an extension of time is needed to "retain an attorney" and "for further counseling into my case."[4] (Id.) By Order entered on January 26, 2011, the Court stayed the matter in order to allow Plaintiff adequate time to secure counsel. (Document No. 18.) The Court further directed as follows: "If Plaintiff secures counsel, Plaintiff is **DIRECTED** to immediately notify the Court and request that the case be reinstated to the active docket. If Plaintiff is unable to secure counsel, Plaintiff is **DIRECTED** to notify the Court within a reasonable period of time, which the Court deems to be 60 days from the entry of this Order." (Id., p. 2.)

## ANALYSIS

Pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Rule 41.1 of the Local Rules of Civil Procedure for the Southern District of West Virginia, District Courts possess the

---

[4] The Court noted that Plaintiff's circumstances changed since the filing of his Complaint. The Bureau of Prisons' Inmate Locator indicates that Plaintiff was released from custody on May 28, 2010.

inherent power to dismiss an action for a *pro se* Plaintiff's failure to prosecute *sua sponte*.[5] See Link v. Wabash Railroad Co., 370 U.S. 626, 629, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962).

Rule 41.1 of the Local Rules provides:

**Dismissal of Actions**. When it appears in any pending civil action that the principal issues have been adjudicated or have become moot, or that the parties have shown no interest in further prosecution, the judicial officer may give notice to all counsel and unrepresented parties that the action will be dismissed 30 days after the date of the notice unless good cause for its retention on the docket is shown. In the absence of good cause shown within that period of time, the judicial officer may dismiss the action. The clerk shall transmit a copy of any order of dismissal to all counsel and unrepresented parties. This rule does not modify or affect provisions for dismissal of actions under FR Civ P 41 or any other authority.

Although the propriety of a dismissal "depends on the particular circumstances of the case," in determining whether to dismiss a case involuntarily for want of prosecution, the District Court should consider the following four factors:

(I) the degree of personal responsibility of the plaintiff;
(ii) the amount of prejudice caused the defendant,
(iii) the existence of a history of deliberately proceeding in a dilatory fashion, and
(iv) the existence of a sanction less drastic than dismissal.

Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir. 1989). In consideration of the first three factors, the Court finds that the delays in this case are attributable solely to the Plaintiff as he has failed to respond to the Court's Order dated October 26, 2011. Specifically, the Court directed Plaintiff to notify the Court within 60 days if he was unable to secure counsel. Additionally, the Court notes that

---

[5] Rule 41(b) of the Federal Rules of Civil Procedure provides:

**(b) Involuntary Dismissal: Effect**. If the plaintiff fails to prosecute or to comply with these rules or any order of court, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule - - except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 - - operates as an adjudication on the merits.

Plaintiff has not accomplish service of process upon the named Defendants.[6] Plaintiff, therefore, is the sole cause of the delays in this action. With respect to the second and third factors, although the record is void of further evidence indicating that Plaintiff has a history of "deliberately proceeding in a dilatory fashion," the Court does not find that the named Defendants will be prejudiced by dismissal of Plaintiff's Complaint.

In consideration of the fourth factor, the Court acknowledges that a dismissal under either Rule 41(b) or Local Rule 41.1 is a severe sanction against Plaintiff that should not be invoked lightly. The particular circumstances of this case, however, do not warrant a lesser sanction. An assessment of fines, costs, or damages against Plaintiff would be unjust in view of Plaintiff's status as a *pro se*, indigent litigant. Moreover, explicit warnings of dismissal would be ineffective in view of Plaintiff's failure to respond to the undersigned's Order entered approximately nine months ago (Document No. 18.). Accordingly, the undersigned has determined that this action should be dismissed without prejudice unless Plaintiff is able to show good cause for his failure to prosecute.[7]

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** this case

---

[6] Based upon a review of the docket sheet, Summonses were issued more than one year ago (Document No. 15) and Plaintiff has not accomplished service of process upon Warden T.R. Craig, Dominic McLain, H. Shrewsbury, K.M. White, and Harrell Watts. Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court - - on motion or on its own after notice to the plaintiff - - must dismiss the action without prejudice against that defendant . . .."

[7] It is Plaintiff's responsibility to provide the Court with a notice of change of address. *See* Rule 83.5 of the Local Rules of Civil Procedure("A *pro se* party must advise the clerk promptly of any changes in name, address, and telephone number.")

without prejudice for failure to prosecute and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*.

Date: October 17, 2011.

*R. Clarke VanDervort*
R. Clarke VanDervort
United States Magistrate Judge